In the

# United States Court of Appeals

### For the Seventh Circuit

———

Nos. 03-3297 & 03-3412

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

ENAAM M. ARNAOUT, also known as
ABU MAHMOUD, also known as
ABDEL SAMIA, also known as
ABU MAHMOUD AL SURI, also known as
ABU MAHMOUD AL HAMAWI,

*Defendant-Appellant,*
*Cross-Appellee.*

———

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 892—**Suzanne B. Conlon**, *Judge.*

———

ARGUED FEBRUARY 15, 2005—DECIDED DECEMBER 2, 2005

———

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Enaam Arnaout pled guilty to conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d). On appeal, both the government and Arnaout challenge the sentence imposed by the district court. We find that the district court erred when it imposed

an enhancement for an offense involving fifty or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because there is insufficient evidence in the record that Arnaout caused an actual loss to at least 50 people. In addition, we find that the district court erred when it failed to consider whether Arnaout qualified for the abuse of trust enhancement pursuant to U.S.S.G. § 3B1.3. Finally, we find that a defendant need not have been convicted of a federal crime of terrorism as defined by 18 U.S.C. § 2332b(g)(5)(B) for the district court to consider whether to apply the terrorism sentencing enhancement pursuant to U.S.S.G. § 3A1.4. The district court, however, did not err when it did not impose this enhancement on Arnaout. We, therefore, vacate Arnaout's sentence and remand this case for resentencing.

## I.  BACKGROUND

On January 2, 2003, Arnaout was charged in an eight-count Second Superseding Indictment. The Indictment alleged that Arnaout conspired to defraud donors to a charity he operated, the Benevolence International Foundation, Inc. ("BIF"). Arnaout represented to donors that BIF would use donated funds solely for humanitarian purposes. In reality, Arnaout along with others diverted a portion of the money raised to support groups engaged in armed confrontations and violence overseas.

On February 10, 2003, Arnaout pled guilty, pursuant to a written plea agreement, to conspiring to violate RICO in violation of 18 U.S.C. § 1962(d). In the plea agreement, Arnaout acknowledged that beginning in May 1993, he was responsible for and directed BIF's operations in the United States. Arnaout admitted that, while he directed BIF's operations, he solicited donations from the public by purporting that BIF and its related overseas offices were part of a charitable organization involved solely in humanitarian work for the benefit of civilian populations, including

refugees and orphans. Arnaout also admitted that he and others agreed to conceal from donors, potential donors, and federal and state governments that a material portion of the donations received by BIF were being used to support soldiers overseas. The support he and others agreed to provide included boots intended for ultimate use by Chechen soldiers, and boots, tents, uniforms and an ambulance intended for ultimate use by Bosnian soldiers. Arnaout also used donor funds to purchase uniforms for a department of a provisional but unrecognized government in Chechnya.

Following the 2001 version of the Sentencing Guidelines for fraud,[1] the district court calculated Arnaout's offense level as follows:

- Base offense level of six pursuant to § 2B1.1(a); plus

- twelve levels based on an amount of loss calculated to be between $200,000 and $400,000 pursuant to § 2B1.1(b)(1)(G); plus

- four levels based on the fraudulent scheme affecting at least fifty victims pursuant to § 2B1.1(b)(2)(B); plus

- four levels pursuant to § 3B1.1(a) because Arnaout was the leader of a criminal activity; plus

- two levels based on the offense involving misrepresentations while acting on behalf of a charitable organization pursuant to § 2B1.1(b)(7)(A); plus

- two levels pursuant to § 2B1.1(b)(8)(B) because

---

[1] The predicate RICO offense to which Arnaout pled guilty was fraud.

> a substantial part of the offense occurred out-
> side of the United States; plus
>
> ●  two levels pursuant to § 3C1.1 for Arnaout's
>    obstruction of justice; and minus
>
> ●  two levels pursuant to § 3E1.1 for Arnaout's
>    acceptance of responsibility in light of his plea.

The court then departed upward an additional two levels based on the harm Arnaout caused to those who should have received the charitable donations, which brought the total offense level to 32. The court determined that Arnaout was in criminal history category I, which corresponded to a Guidelines range of imprisonment between 121 and 151 months. The court sentenced Arnaout to 136 months.

## II. ANALYSIS

Post-*Booker*, we continue to review the district court's factual findings at sentencing for clear error and the application of those facts to the Sentencing Guidelines *de novo. United States v. Turner*, 400 F.3d 491, 500 (7th Cir. 2005).

A.   Enhancement for a Substantial Part of the Fraudulent
     Scheme Committed From Outside the United States

The Guidelines, pursuant to § 2B1.1(b)(8)(B), allow for a two-point enhancement if a substantial part of a fraudulent scheme was committed from outside of the United States. Arnaout admits that the results of his crime occurred outside of the United States, but argues that the district court erred in applying the enhancement because the racketeering acts of mail fraud, wire fraud, and money laundering were all completed within the United States. We find that the district court did not err in applying this

enhancement because, even though all of Arnaout's racketeering activities occurred within the United States, the fraud in this case was not complete until the diverted funds from the charitable organization were used to deliver resources to soldiers overseas. The district court's application of this enhancement, therefore, was entirely appropriate.

B.  Enhancement for an Offense Involving Fifty or More Victims

The Guidelines allow for an enhancement of four levels where an offense involves fifty or more victims. U.S.S.G. § 2B1.1(b)(2)(B). The term victim is defined as "any person who has sustained any part of the actual loss." U.S.S.G. § 2B1.1 cmt. n.1 (2002). Arnaout argues that the district court erred in applying this enhancement to him because there was no showing that the funds of fifty donors were illegally diverted and used for non-charitable purposes. Arnaout admits that a portion of the total donations to BIF went to non-humanitarian, non-charitable uses and that more than fifty donors contributed to BIF during his time as executive director. Arnaout argues that the district court erred when it failed to account for each dollar diverted and did not trace each diverted dollar back to a specific donor. We agree with Arnaout.

According to the record, between 1994 and 2001, BIF received over $17 million in donations from over 17,000 individuals, businesses and organizations. The district court found that the amount of loss attributable to Arnaout, however, was approximately $300,000. There is insufficient evidence in the record to support a calculation of the number of donors that contributed the approximate $300,000. It is entirely conceivable that of the over 17,000 potential victims, more than fifty contributed to the

$300,000, but we cannot find proof by a preponderance of the evidence in the record that at least fifty donors contributed the amount attributable to Arnaout. Accordingly, we reverse the district court's application of this enhancement.

C.   Abuse of Trust Enhancement

The government argues that the district court erred in not applying the abuse of trust enhancement pursuant to § 3B1.3. At sentencing, the district court stated that it was not persuaded that the application of the abuse of trust enhancement was appropriate in this case after having already applied enhancements for the defendant's fraudulent misrepresentations while acting on behalf of a charity pursuant to § 2B1.1(b)(7)(A) and for the defendant's role as a leader or organizer of criminal activity pursuant to § 3B1.1(a). The court reasoned that applying the abuse of trust enhancement would result in "significant double counting" as there was already "substantial overlap" between the predicate offense and the two enhancements already applied. We disagree.

Impermissible double counting occurs when identical conduct justifies two upward adjustments under the Guidelines. *United States v. Beith*, 407 F.3d 881, 888 (7th Cir. 2005) (citations omitted). In other words, a sentencing court may not describe the same conduct in two different ways to justify two separate upward adjustments. *Id.* So long as there is a sufficient factual basis for each upward adjustment, a district court does not engage in double counting when it enhances a defendant's sentence for separate elements of the same act. *Id.*

We find that the district court incorrectly held that applying a separate enhancement for Arnaout's abuse of trust would amount to impermissible double counting. Abuse of trust is not an element of Arnaout's predicate offense of fraud, and the application of the abuse of trust

enhancement could account for behavior separate from Arnaout's fraudulent misrepresentations while acting on behalf of a charitable activity and separate from his role as leader or organizer of a criminal activity.

The § 2B1.1(b)(7)(A) enhancement for fraudulent misrepresentation while acting on behalf of a charity captures the aggravating nature of Arnaout's conduct in soliciting money from donors who thought that their money was being applied to humanitarian assistance for needy individuals. This enhancement would apply equally to a low-level BIF employee who solicited donors without leveraging any trust the donors placed in the employee individually. In addition, the enhancement would apply to someone who was not employed by BIF but falsely purported to be associated with BIF to solicit donations.

The § 3B1.1(a) enhancement for Arnaout's role as the leader of criminal activity addresses his activities as head of a racketeering operation in concert with others to divert charitable donations. Arnaout properly received this enhancement not because he abused the trust others placed in him or because he committed a fraud while acting on behalf of a charitable organization, but because he led others in the commission of extensive criminal activity. Had Arnaout acted alone, this enhancement would not apply, but the other two enhancements would be no less applicable.

In contrast, the abuse of trust enhancement pursuant to § 3B1.3 accounts for the faith and confidence placed in him as executive director of the BIF by the donors who relied on his word and his title within the organization in making their decision to contribute. In addition, this enhancement accounts for the faith and confidence placed in him by the federal government when the government relied on the representations made by Arnaout on behalf of BIF that its purpose was solely humanitarian and thereby granted tax-exempt status to BIF.

Each of these three enhancements could account for related but separate conduct in this case. The application of each enhancement would not improperly use identical conduct to account for different enhancements. It is unclear from the record, however, whether the district court believed that to apply the abuse of trust enhancement would amount to impermissible double counting or whether the district court found that there were insufficient facts in the record to support the application of the abuse of trust enhancement by a preponderance of the evidence or both. Accordingly, we remand with instructions to consider its application.

D.   The Domestic Terrorism Enhancement

The government argues that the district court erred in not applying the domestic terrorism enhancement pursuant to § 3A1.4. The district court found § 3A1.4 did not apply because Arnaout was not convicted of a federal crime of terrorism as defined by 18 U.S.C. § 2332b(g)(5)(B). *United States v. Arnaout*, 282 F. Supp. 2d 838, 843 (N.D. Ill. 2003). We disagree.

As a matter of first impression in this circuit, we find that a defendant need not be convicted of a federal crime of terrorism as defined by § 2332b(g)(5)(B) for the district court to apply § 3A1.4. Instead, the domestic terrorism enhancement is applicable where a defendant is convicted of a federal crime of terrorism as defined by § 2332b(g)(5)(B) or where the district court finds that the purpose or intent of the defendant's substantive offense of conviction or relevant conduct was to promote a federal crime of terrorism as defined by § 2332b(g)(5)(B).

We review the district court's interpretation of the Guidelines *de novo. United States v. Von Loh*, 417 F.3d 710, 712 (7th Cir. 2005). Courts interpreting the Guidelines must "begin with the text of the provision and the plain

meaning of the words in the text." *Id.* (quoting *United States v. Garcia Lopez*, 375 F.3d 586, 587 (7th Cir. 2004)). In addition to the actual language of the Guidelines, we must also consider the Guidelines' Application Notes, as they are viewed as "part of the Guidelines themselves, and not mere commentary on them." *Id.*; *see also Stinson v. United States*, 508 U.S. 36, 38 (1993).

Section 3A1.4 of the Sentencing Guidelines provides:

(a) If the offense[2] is a felony that involved, or was intended to promote, a federal crime of terrorism, increase [the offense level] by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category . . . shall be Category VI.

U.S.S.G. § 3A1.4. Although this is an issue of first impression in this circuit, we are guided in our decision by the decisions of other circuit courts that have addressed this very issue. *See United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004) (holding that where the purpose or intent of a defendant's underlying conviction or relevant conduct is to promote a federal crime of terrorism as defined by § 2332b(g)(5)(B) then § 3A1.4 is triggered); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001) (same).

The district court, relying on the enabling legislation of § 3A1.4, ruled that Congress intended § 3A1.4 to apply only upon a federal crime of terror conviction as detailed in 18 U.S.C. § 2332b(g)(5)(B). *Arnaout*, 282 F. Supp. 2d at 844. In reaching this conclusion, the district court gave meaning

---

[2] The Guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(k) (2002).

only to the word "involved," and ignored the words "or was intended to promote." The Guidelines must be interpreted, however, so no words are discarded as meaningless, redundant or surplusage. *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004) (finding that this court must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous).

The ordinary and plain meaning of "involved" means "to include." *See* Random House Webster's College Dictionary 689 (2d ed. 1997). We thus agree with the district court's interpretation that the word "involved," as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct includes a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered. *See Mandhai*, 375 F.3d at 1247-48 ("The term 'involve' means to 'include'"). This interpretation of the word "involved" is also consistent with how the word is used throughout the Guidelines. *See Graham*, 275 F.3d 490, 516 ("The word 'involved' occurs frequently throughout the Guidelines, both in the substantive provisions and in the commentary, and is typically employed to mean 'included.'")

In interpreting the phrase "or was intended to promote," we find that the district court erred by ignoring the plain, unambiguous text of the Guidelines. As the Eleventh Circuit stated:

> Had the Guideline drafters intended that § 3A1.4 apply only where the defendant is convicted of a crime listed in 18 U.S.C. § 2332b(g)(5)(B), they would have included such limiting language. Instead, they unambiguously cast a broader net by applying the enhancement to any offense that "involved" or was "intended to promote" a terrorism crime.

*Mandhai*, 375 F.3d at 1247. In its ordinary usage, "promote" means "to help or encourage." *See* Random House Webster's

College Dictionary 1042 (2d ed. 1997). As a result, the word "promote," as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct helps or encourages a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered. *See Mandhai*, 375 F.3d at 1248 ("Under a plain reading, the phrase 'intended to promote' means that if a goal or purpose was to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B), the terrorism enhancement applies."). We find, therefore, that § 3A1.4 must be considered when a defendant is convicted of a federal crime of terrorism as defined by 18 U.S.C. § 2332b(g)(5)(B) or when a defendant's felony conviction or relevant conduct has as one purpose the intent to promote a federal crime of terrorism. In enhancing a defendant's sentence pursuant to § 3A1.4 where the defendant has not been convicted of a federal crime of terrorism, however, a district court must identify which enumerated federal crime of terrorism the defendant intended to promote, satisfy the elements of § 2332b(g)(5)(A), and support its conclusions by a preponderance of the evidence with facts from the record. *See, e.g.*, *Graham*, 275 F.3d at 517. After application of § 3A1.4, the district court can then impose a sentence up to the statutory maximum of the underlying offense of conviction. U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); *Dean*, 414 F.3d at 727.

In this case, the district court found that Arnaout's offense of conviction was not included in the exhaustive list of federal offenses set out in 18 U.S.C. § 2332b(g)(5)(B) and, therefore, did not apply § 3A1.4. We now know that the district court should have considered whether Arnaout's offense or relevant conduct promoted a federal crime of terrorism. This error notwithstanding, the district court did

find that the record did not establish by a preponderance of the evidence that Arnaout attempted, participated in, or conspired to commit any act of terrorism. The district court also found that the government had not established that the Bosnian and Chechen recipients of BIF aid were engaged in a federal crime of terrorism, or that Arnaout intended the donated boots, uniforms, blankets, tents, X-ray machine, ambulances, nylon or walkie talkies to be used to promote a federal crime of terrorism. We find all of the district court's findings on this issue consistent with the record, not clearly erroneous, and sufficient to support the district court's refusal to apply § 3A1.4.

In the alternative, the government argues that Application Note 2 of § 3A1.4 stands as an independent basis for applying § 3A1.4 because Arnaout's relevant conduct includes obstruction of justice.

Application Note 2 reads as follows:

> 2. Harboring, Concealing, and Obstruction Offenses.—For purposes of this guideline, an offense that involved (A) harboring or concealing a terrorist who committed a federal crime of terrorism (such as an offense under 18 U.S.C. § 2339 or 2339A); or (B) obstructing an investigation of a federal crime of terrorism, shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism.

The district court concluded that a two-level enhancement under § 3C1.1 for obstruction of justice was appropriate in this case based on two declarations Arnaout made under penalty of perjury in a separate case, *Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935 (N.D. Ill. 2002). In that case, Arnaout's declarations were submitted in support of BIF's motion seeking release of BIF assets frozen by the government. In his declarations,

Arnaout attested that BIF used its funds only to assist the poor and needy; donations to BIF were used solely for charitable, humanitarian purposes; and BIF had never provided aid or support to people or organizations known to be engaged in violence, terrorist activities, or military operations of any nature. The district court found these attestations to be false based on Arnaout's admissions during his guilty plea and documentary evidence establishing that BIF used a portion of its funds to aid military operations in Chechnya and Bosnia. The district court concluded, however, that Arnaout did not obstruct an investigation of a federal crime of terrorism nor did Arnaout seek to promote a federal crime of terrorism by his obstruction. Instead, the district court held that Arnaout obstructed the federal investigation into his offense of fraud and racketeering, which triggered the enhancement of § 3C1.1(A). *See* § 3C1.1(A) (obstruction of justice enhancement applies if defendant willfully attempted to obstruct or impede the administration of justice during the investigation of the instant offense of conviction). We find that the district court's findings on this issue are not clearly erroneous, and we agree with the district court's conclusion that, because there is insufficient evidence that Arnaout obstructed an investigation of a federal crime of terrorism or intended to promote a federal crime of terrorism by his obstruction, Application Note 2 of § 3A1.4 is inapplicable to this case.

E.  The District Court's Application of its Own Upward Departure

   As a final note, Arnaout also argues that the district court erred in imposing its own two-point upward departure. Arnaout contends that the imposition of such a departure was legally incorrect because it fell outside of the Guidelines' provisions for departures and was otherwise unsup-

ported by the factual record. Although we need not reach this issue in light of the remand for resentencing, we note that the concept of "departures" has been rendered obsolete in the post-*Booker* world. *See United States v. Johnson*, No. 04-1463, 2005 WL 2592218, at *3 (7th Cir. Oct. 14, 2005). Instead, "what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory." *Id.* Because the initial Guidelines sentence here must be recalculated by the district court on remand, we cannot reach the issue of the reasonableness of Arnaout's sentence. *See Dean*, 414 F.3d 725, 727-28 (sentencing judge must properly compute the Guidelines sentence to permit review for reasonableness). We note, however, that the district court's factual determination that Arnaout also victimized Chechen and Bosnian refugees by fraudulently diverting to the military charity funds that were meant for refugees was not clearly erroneous. Contrary to Arnaout's argument, the district court's determination here was not based on pure speculation. Instead, the district court reviewed actual letters from refugee victims submitted by the government to determine the harm caused by Arnaout's diversion of funds and reasonably concluded that the diversion of the charity funds caused a tangible harm to the refugees that was not adequately represented in the Guidelines calculations.

F.   Arnaout's *Booker*-Related Arguments

Arnaout argues that his Sixth Amendment right to a jury's determination of facts underlying his sentence enhancement was violated when the district judge made several factual determinations by a preponderance of the evidence that led to enhancements to his sentence. *See Booker*, 125 S. Ct. at 756. Because we are already

remanding this case for resentencing in accordance with *Booker*, there is no need for us to consider the propriety of a limited remand under *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005).

### III.  CONCLUSION

For all the foregoing reasons, we VACATE Arnaout's sentence and REMAND for resentencing.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*